UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMIL NASSAR, aka <br> JAMIL MOHAMMED NASSAR, <br>     Plaintiff, <br>   v. <br> MICHAEL J. ASTRUE, <br> Commissioner of Social Security, <br>     Defendant. | No. EDCV 08-1812-RC <br><br> OPINION AND ORDER |

Plaintiff Jamil Nassar, aka Jamil Mohammed Nassar, filed a complaint on December 15, 2008, seeking review of the Commissioner's decision denying his application for disability benefits. On May 11, 2009, the Commissioner answered the complaint, and the parties filed a joint stipulation on June 17, 2009.

## BACKGROUND

On April 26, 2005, plaintiff, who was born on September 8, 1955, applied for disability benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423, claiming an inability to work since

June 30, 1988,[1] due to schizophrenia and Hodgkin's disease. Certified Administrative Record ("A.R.") 124-28, 149. The plaintiff's application was initially denied on June 9, 2005, and was denied again on June 24, 2005, following reconsideration. A.R. 72-82. The plaintiff then requested an administrative hearing, which was held on February 2, 2007. A.R. 85, 631-38. On March 27, 2007, the administrative law judge issued a decision finding plaintiff is not disabled. A.R. 58-65. The plaintiff appealed this decision to the Appeals Council, which remanded the matter for further administrative proceedings. A.R. 68-71, 112.

On June 19, 2008, a new administrative hearing was held before Administrative Law Judge Jay E. Levine ("the ALJ"), A.R. 639-67, and, on July 24, 2008, the ALJ issued a decision finding plaintiff is not disabled. A.R. 33-44. The plaintiff appealed this decision to the Appeals Council, which denied review on October 16, 2008. A.R. 7-16.

**DISCUSSION**

**I**

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the decision denying plaintiff disability benefits to determine if his findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching his decision. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009); Vernoff v.

---

[1] Although plaintiff initially set forth an onset date of June 30, 1988, A.R. 124, he subsequently modified this date to June 30, 1987, which is prior to his date last insured of March 31, 1988. A.R. 36, 159.

2

Astrue, 568 F.3d 1102, 1105 (9th Cir. 2009).  "In determining whether the Commissioner's findings are supported by substantial evidence, [this Court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001).  "Where the evidence can reasonably support either affirming or reversing the decision, [this Court] may not substitute [its] judgment for that of the Commissioner."  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007), cert. denied, 128 S. Ct. 1068 (2008); Vasquez, 572 F.3d at 591.

   The claimant is "disabled" for the purpose of receiving benefits under the Act if he is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  "The claimant bears the burden of establishing a prima facie case of disability."  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).  When a Title II claimant's period of eligibility for disability benefits expires on a specific date, it is the claimant's burden to prove he was either permanently disabled or subject to a condition that became so severe as to disable him **prior** to that date.[2]  Lingenfelter v. Astrue, 504 F.3d 1028, 1033-34 (9th Cir. 2007); Greger v. Barnhart,

---

[2] Here, the ALJ found March 31, 1988, is plaintiff's date last insured, A.R. 38, and plaintiff does not challenge this finding.

3

1  464 F.3d 968, 970 (9th Cir. 2006).

3  The Commissioner has promulgated regulations establishing a five-step sequential evaluation process for the ALJ to follow in a disability case. 20 C.F.R. § 404.1520. In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If not, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting him from performing basic work activities. 20 C.F.R. § 404.1520(c). If so, in the **Third Step**, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. 20 C.F.R. § 404.1520(d). If not, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past work. 20 C.F.R. § 404.1520(f). If not, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). Moreover, where there is evidence of a mental impairment that may prevent a claimant from working, the Commissioner has supplemented the five-step sequential evaluation process with additional regulations addressing mental impairments.[3] Maier v.

---

[3] First, the ALJ must determine the presence or absence of certain medical findings relevant to the ability to work. 20 C.F.R. § 404.1520a(b)(1). Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four

4

Comm'r of the Soc. Sec. Admin., 154 F.3d 913, 914-15 (9th Cir. 1998) (per curiam).

Applying the five-step sequential evaluation process, the ALJ found plaintiff did not engage in substantial gainful activity between his alleged onset date of June 30, 1987, and his date last insured of March 31, 1988.  (Step One).  The ALJ then found plaintiff had the "medically determinable impairment[s of]:  possible schizophrenia and cocaine abuse" but did **not** have a severe impairment or combination of impairments prior to his date last insured; therefore, he is not disabled.  (Step Two).

**II**

The Step Two inquiry is "a de minimis screening device to dispose of groundless claims."  Smolen, 80 F.3d at 1290; Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005).  The Supreme Court has recognized that including a severity requirement at Step Two "increases the efficiency and reliability of the evaluation process by identifying at an early

---

areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation.  20 C.F.R. § 404.1520a(c)(2-4).  Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment.  20 C.F.R. § 404.1520a(d).  Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a Listing.  20 C.F.R. § 404.1520a(d)(2).  Finally, if a Listing is not met, the ALJ must then perform a residual functional capacity assessment, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding plaintiff's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§ 404.1520a(c)(3)]."  20 C.F.R. § 404.1520a(d)(3), (e)(2).

5

stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." Bowen v. Yuckert, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L. Ed. 2d 119 (1987). However, an overly stringent application of the severity requirement violates the Act by denying benefits to claimants who do meet the statutory definition of disabled. Corrao v. Shalala, 20 F.3d 943, 949 (9th Cir. 1994).

A severe impairment or combination of impairments within the meaning of Step Two exists when there is more than a minimal effect on an individual's ability to do basic work activities. Webb, 433 F.3d at 686; Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); see also 20 C.F.R. § 404.1521(a) ("An impairment or combination of impairments is not severe if it does not significantly limit [a person's] physical or mental ability to do basic work activities."). Basic work activities are "the abilities and aptitudes necessary to do most jobs," including physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling, as well as the capacity for seeing, hearing and speaking, understanding, carrying out, and remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b); Webb, 433 F.3d at 686. If a claimant meets his burden of demonstrating he suffers from an impairment affecting his ability to perform basic work activities, "the ALJ *must* find that the impairment is 'severe' and move to the next step in the SSA's five-step process." Edlund v. Massanari, 253 F.3d 1152, 1160 (9th Cir.

2001) (emphasis in original); Webb, 433 F.3d at 686.

The plaintiff contends substantial evidence does not support the ALJ's Step Two determination that he did not have a severe impairment or combination of impairments prior to March 31, 1988, because the ALJ failed to properly consider the opinions of two examining physicians,[4] a counselor's evaluation and lay witness statements.

### A. Examining Physicians:

"[T]he ALJ may only reject . . . [an] examining physician's uncontradicted medical opinion based on 'clear and convincing reasons[,]'" Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citation omitted); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006), and "[e]ven if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record." Regennitter v. Comm'r of the Soc. Sec. Admin., 166 F.3d 1294, 1298-99 (9th Cir. 1999); Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008).

On September 25, 1995, an unspecified physician (signature illegible) examined plaintiff and diagnosed him with a history of paranoid schizophrenia and substance abuse and determined plaintiff's //

---

[4] The plaintiff mischaracterizes the examining physicians as treating physicians, see Jt. Stip. at 13:6-14:7, 14:15-16:28, 17:11-15, and points to nothing in the record showing these physicians treated plaintiff. In any event, even if these doctors were treating physicians, the result would be the same.

7

Global Assessment of Functioning ("GAF") was 50.[5]  A.R. 630.[6]

On July 17, 1996, I. Lamont Casey, M.D., examined plaintiff and diagnosed him as having a chronic severe paranoid-type schizophrenic reaction and determined plaintiff's GAF was 50.  A.R. 269-74.  Dr. Casey concluded that plaintiff "did not suffer from a psychotic process while on active duty in the Marine Corps [in 1975].  But, had difficulty adjusting, because of personality and character problems which are not related to his schizophrenia."  A.R. 273; see also A.R. 274 ("[T]here is no relationship [between] his character and personality problems while on active duty, [and] his current psychiatric diagnosis.").

The plaintiff contends that, in Step Two, the ALJ and Appeals Council did not properly consider the opinions of the unidentified physician and Dr. Casey.  There is no merit to this claim.  In fact, plaintiff points to no evidence in the record demonstrating that, prior to his date last insured, he had a severe mental impairment that

---

[5]  A GAF of 41-50 means the individual exhibits "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)."  American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. (Text Revision) 2000).

[6]  Although this examination occurred in 1995, it was not submitted to the ALJ; instead, it was submitted to the Appeals Council after the ALJ's decision.  A.R. 11, 615-30.  Since "the Appeals Council affirmed the decision of the ALJ denying benefits to [the plaintiff, the additional] evidence is part of the record on review to this court."  Gomez v. Chater, 74 F.3d 967, 971 (9th Cir.), cert. denied, 519 U.S. 881 (1996); Vasquez, 572 F.3d at 595 n.7.

8

1  had any effect on his ability to perform basic work activities.
2  Therefore, plaintiff has not shown any error in Step Two.  <u>Ukolov v.</u>
3  <u>Barnhart</u>, 420 F.3d 1002, 1006 (9th Cir. 2005); <u>Verduzco v. Apfel</u>, 188
4  F.3d 1087, 1089 (9th Cir. 1999).

### B.   Counselor and Lay Witnesses:

A counselor is not an acceptable medical source, 20 C.F.R. § 404.1513(a); <u>Tindell v. Barnhart</u>, 444 F.3d 1002, 1005 (8th Cir. 2006); nevertheless, an ALJ must consider such evidence, at a minimum, as qualified evidence or lay testimony.  20 C.F.R. § 416.913(d)(3); <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1231-32 (9th Cir. 1987); <u>Bilby v. Schweiker</u>, 762 F.2d 716, 719 n.3 (9th Cir. 1985) (per curiam).

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir. 2001); <u>Valentine v. Comm'r, Soc. Sec. Admin.</u>, 574 F.3d 685, 694 (9th Cir. 2009).  Thus, third party statements are competent evidence, which the ALJ must consider.  <u>Schneider v. Comm'r of the Soc. Sec. Admin.</u>, 223 F.3d 968, 975 (9th Cir. 2000); <u>see also</u> <u>Smolen</u>, 80 F.3d at 1289 ("[T]estimony from lay witnesses who see the claimant every day is of particular value. . . .").  "Further, the reasons 'germane to each witness' must be specific." <u>Bruce v. Astrue</u>, 557 F.3d 1113, 1115 (9th Cir. 2009); <u>Stout v. Comm'r, Soc. Sec. Admin.</u>, 454 F.3d 1050, 1054 (9th Cir. 2006).

The plaintiff complains that the ALJ's opinion is not supported

by substantial evidence because the ALJ did not specifically discuss the 1994 opinion of C. French, a MFCC trainee, who "diagnosed" plaintiff as having chronic paranoid schizophrenia and a borderline personality disorder and determined plaintiff's GAF was 38[7] (highest past year 45), opined plaintiff's prognosis was guarded, and discharged plaintiff to treatment at the Veterans Administration ("VA"). A.R. 219. However, plaintiff again fails to identify anything in the French opinion (or elsewhere in the medical record) supporting his claim that he had a severe mental impairment **prior** to his date last insured -- more than six years before the French opinion was rendered. Thus, plaintiff has not shown the ALJ erred. Ukolov, 420 F.3d at 1006; see also Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) ("[T]he ALJ is not required to discuss evidence that is neither significant nor probative[.]").

Further, plaintiff contends the ALJ's decision is not supported by substantial evidence because the ALJ failed to properly consider letters written by plaintiff's wife and plaintiff's former Marine colleagues. More specifically, on May 11, 1992, plaintiff's wife wrote the VA a letter detailing her history with plaintiff and his deteriorating condition. A.R. 200-02. Mrs. Nassar stated she met plaintiff in 1975, and he was a lonely and emotionally disturbed

---

[7] A GAF of 38 indicates the individual has "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school). American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. (Text Revision) 2000).

1 person who did not receive any mental health treatment until 1991.
2 A.R. 200-01.  Former Marine colleagues of plaintiff's wrote letters
3 prior to plaintiff's discharge from the service detailing plaintiff's
4 immaturity and attempts to simulate mental illness.  For instance,
5 First Lieutenant Anthony J. Quinn stated:

> [Plaintiff] is an enigma to me.  He is extremely immature and untrustworthy.  He is incapable of performing the simplest of tasks without strict supervision.  He is unable to cope with the military system as it exists today.  He is argumentative and refuses to obey orders which he does not believe will benefit him.  He claims to be a conscientious objector and is constantly refusing to participate in military training.  He will[,] however, walk along with the platoon and pick flowers and make bouquets for other members of the platoon.  He has only one desire and that is to get out of the Marine Corps.  [¶]  He has tried simulating a nervous breakdown and has tried imitating actions of other individuals known to be mentally incoherent[,] all to no avail since he has been recognized as a fake.  It is my belief that [plaintiff] has a distinct character and behavior disorder which contributes substancially [sic] to his substandard performance.  I believe that it would be in the best interests of both the individual concerned and the United States Marine Corps if he were discharged immediately.

A.R. 203.  Similarly, Corporal Ricky L. Gibson stated:

>[Plaintiff] seems to be unable to act his age. He talks in an immature manner, stares into the sun and picks flowers. He is very untrustworthy and unreliable. He refuses to do as ordered and will sit and argue with anyone in authority and then not carry out the order. He is always going to sick bay, but is in fine shape when liberty call is sounded. He is continually trying to get out of any job he can and refuses to co-operate with his superiors. I feel that [plaintiff] will never be able to adjust to the military way of life.

A.R. 204. Finally, Corporal Benigne J. Umagat agreed with these sentiments, describing plaintiff as "untrustworthy" and argumentative, and as "constantly going to sick bay, but . . . always well enough to go on liberty[,]" and concluding plaintiff's statements about "how he hates violence" are "just a story he uses to try to get out of the Marine Corps." A.R. 205.

    The ALJ considered all of this evidence, noting "[t]he statements from claimant's wife indicated the [plaintiff] has mental problems, but that the claimant did not seek mental health treatment until 1991 due to gradual worsening of his mental health condition[,]" while the "letters from fellow Marines stat[e] that while the claimant was on active duty, he had difficulty at meetings and making formations, etc., but when it came time to liberty, he was always ready." A.R. 40 (citations omitted). The ALJ concluded that the statements by plaintiff's wife and his fellow Marines "are not inconsistent with the overall medical evidence and they are credible to the extent that the

1  claimant has no severe impairment or functional limitations at any
2  time relevant herein." A.R. 41. Thus, the ALJ properly considered
3  the lay testimony. See, e.g., Vick v. Comm'r of the Soc. Sec. Admin.,
4  57 F. Supp. 2d 1077, 1086 (D. Or. 1999) (ALJ properly considered lay
5  testimony, and "was not required to explain his assessment of it any
6  further" when ALJ recited the testimony and "the ALJ's determination
7  [was] not inconsistent with the lay testimony. . . ."), affirmed by, 5
8  Fed. Appx. 781 (9th Cir. 2001).

**ORDER**

IT IS ORDERED that: (1) plaintiff's request for relief is denied; and (2) the Commissioner's decision is affirmed, and Judgment shall be entered in favor of defendant.

DATE:  February 18, 2010            /S/ ROSALYN M. CHAPMAN
                                    ROSALYN M. CHAPMAN
                                    UNITED STATES MAGISTRATE JUDGE

R&R-MDO\08-1812.mdo
2/18/10